# IN THE COURT OF APPEALS OF IOWA

No. 24-0428
Filed June 19, 2024

IN THE INTEREST OF A.M. and A.M.,
Minor Children,

E.R., Mother,
       Appellant.
_____

Appeal from the Iowa District Court for Washington County, Patrick McAvan, Judge.

A mother appeals the termination of her parental rights to two children. **AFFIRMED.**

Andrew W. Stangl, Sigourney, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Patrick C. Brau of Brau Law Office, Mount Pleasant, attorney and guardian ad litem for minor children.

Considered by Ahlers, P.J., and Chicchelly and Buller, JJ.

**BULLER, Judge.**

The mother appeals termination of her parental rights concerning two children with initials A.M. (one born in 2012 and the other in 2019). The father of one child consented to termination, and his rights are not at issue in this appeal; the other father is unknown. We affirm termination, finding sufficient evidence on at least one ground, termination is in the children's best interests, and the mother's reasonable-efforts claim was not preserved.

The mother has a history with the Iowa Department of Health and Human Services (HHS) related to substance abuse and her mental health. Her parental rights to another child were previously terminated. HHS became involved with the mother again in July 2022 based on a report she was using methamphetamine while providing care for the children, as was her paramour while residing in the home. Two months later, police arrested the mother for driving while barred and possession of drug paraphernalia. And two months after that, the children at issue in this appeal were adjudicated in need of assistance (CINA).

The mother admitted to daily or "almost daily" methamphetamine use and her paramour's substance abuse, but she denied either of them used substances in the home. She participated in treatment inconsistently: she left one treatment program because she couldn't bring her computer and was later discharged from another when she "just stopped showing up." And she tested positive for methamphetamine at least four times before she stopped testing. She also told a worker that she was using marijuana daily after allegedly quitting methamphetamine.

The mother eventually ended her relationship with the methamphetamine-using paramour and moved in with a new boyfriend who is a registered sex offender (and whose index offense involved a minor victim). Throughout the case, the mother struggled to consistently attend visits and had issues with housing—at various points reporting she was homeless and apparently residing with her sex-offender boyfriend in his car as of trial. During one visit, she slept on a bench while the children played nearby. The mother never progressed to trial home visits or unsupervised visits.

An HHS worker testified that the mother's failure to comply with court orders or complete services was consistent throughout her history with the department in this and previous cases. In addition to her abandoned substance-abuse treatment, records confirm the mother also failed to successfully engage in mental-health treatment—which she believed was unnecessary. At one point the mother told a worker her mental health "is not up for discussion and that is final." But HHS records document the mother's struggle with mental health dating back to her teens.

As of trial, the children were placed in separate foster homes due to reports of abuse at a family placement, behavior problems, and disruptions that arose during attempts to place them together. The foster placements have both worked with the children on these issues, and HHS believed both children were adoptable. One HHS worker observed—and records confirmed—that when the mother missed visits or did not behave appropriately, the children "would express frustration," "act out," or "hav[e] a meltdown."

The mother failed to appear at the combined permanency hearing and termination trial. She later called HHS "crying and screaming" that she had the time of the hearing wrong; the mother falsely claimed she had never received notice and hung up on HHS, and the mother's sister explained that she called the mother to ensure she was awake the morning of trial. The mother's attorney did not object to the State's exhibits or judicial notice of the underlying files but did briefly cross-examine an HHS worker concerning the mother's intermittent sobriety, HHS's difficulties meeting with her, and one of the children's behavior problems during transitions in placement.

The juvenile court found the children could not be returned to the mother due to her failure to address her mental-health and substance-abuse problems, failure to engage with services, and lack of safe and stable housing. The court also emphasized that the mother had failed to process how her actions endangered the children, as evidenced by continually blaming HHS for all of her problems. Consistent with recommendations from the county attorney, HHS, and the children's guardian ad litem, the court terminated the mother's rights to both children under Iowa Code section 232.116(1)(f) and (g) (2023). The mother appeals, and we review de novo. *See In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

**Statutory elements.** The mother's petition challenges termination under section 232.116(1)(f), but not (g). When a parent's rights are terminated under multiple grounds, we may affirm on any ground supported by the record. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). Because the mother fails to challenge termination under subparagraph (g) in her petition on appeal, we find she has

waived any error on that ground. *See, e.g.*, *In re R.S.*, No. 22-0196, 2022 WL 4362192, at *1 (Iowa Ct. App. Sept. 21, 2022); *In re N.N.*, No. 21-1978, 2022 WL 610318, at *1 (Iowa Ct. App. Mar. 2, 2022); *In re K.K.*, No. 16-0151, 2016 WL 1129330, at *1 (Iowa Ct. App. Mar. 23, 2016). To the extent the issue was not waived, we find termination under paragraph (g) was supported by the evidence: it was uncontested that the children were adjudicated CINA and the court had previously terminated the mother's rights to another child; the record demonstrates the mother "continues to lack the ability or willingness to respond to services" which could correct the danger posed to the children; and there is no reason to believe additional rehabilitation would resolve the harm that led to adjudication. *See* Iowa Code § 232.116(1)(g)(1)–(4).

**Best interests.** The mother also asserts termination is not in the children's best interests. In assessing best interests, we give primary weight "to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." *Id.* § 232.116(2). On review, we agree with the juvenile court that termination is in these children's best interests. The mother has made little if any progress toward resolving her substantial problems with mental health, controlled substance abuse, or housing. The children's reactions to the mother's inconsistent attendance during visits highlights their need for the permanency, stability, and safety offered by termination and adoption.

To the extent the best-interests argument in the mother's petition veers into a suggestion the court should have established a guardianship rather than terminate her rights, and to the extent we can reach the claim, we reject it on the

merits. "Importantly, 'a guardianship is not a legally preferable alternative to termination.'" *In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2018) (quoting *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017)). Without dwelling on the details, we note HHS did not approve one suggested relative as potential placement because of her own lengthy history with HHS. Another potential relative placement left the child she adopted after the previous termination unsupervised for long periods of time in the mother's care. Guardianship was not a viable option here, and the mother is owed no relief on this issue to the extent it is properly before us.

**Reasonable efforts.** The mother also makes a generalized challenge to the efforts HHS made toward reunification. Without specifying anything else HHS could or should have done, she argues "sufficient reasonable efforts were not made to assist her to work toward reunification with the children." We seriously question whether this claim is specific enough to invoke appellate review, as it does not identify specific services the mother believed the department failed to provide that could have precluded termination. But even if the issue was adequately briefed, it would fail for another reason: it wasn't preserved. To preserve error, parents must "object when they claim the nature or extent of services is inadequate," and must generally do so before the termination trial. *In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017); *see also In re C.B.*, 611 N.W.2d 489, 493–94 (Iowa 2000). Here, the mother did not complain to the juvenile court about reasonable efforts or request any additional services from the court. As a result, any challenge related to additional services is not preserved for our review. *See In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005).

**More time.** The mother's petition includes a passing reference to requesting more time. It's buried in the reasonable-efforts section and is not supported by any factual discussion or legal authority. We find this cursory reference inadequate to invoke appellate review. *See, e.g.*, *In re J.R.*, No. 22-1470, 2023 WL 2148760, at *3 (Iowa Ct. App. Feb. 22, 2023) ("sprinkled mentions" of an issue are insufficient to invoke appellate review). But, again, even if the issue was adequately raised, we would reject it on the merits. There is no reason to believe the grounds for termination would "no longer exist" after a six-month extension given this mother's lengthy history and failure to progress. *See* Iowa Code § 232.104(2)(b).

**AFFIRMED.**